IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAHKINA T. SELLERS<br>650 Maskell Street, Apt. 503<br>Alexandria, Virginia  22301<br><br>   Plaintiff,<br><br>   v.<br><br>CONCRETE MIXES, INC.<br>100 M Street, S.E., Suite 600<br>Washington, D.C.  20003<br><br>Serve:  National Registered Agents, Inc.<br>   1015 15th Street, N.W., Suite 1000<br>   Washington, D.C.  20005<br><br>   Defendant. | C.A. No. 1:19cv1961 |

## COMPLAINT

COMES NOW THE PLAINTIFF, TAHKINA T. SELLERS, by counsel, and moves this Court for entry of judgment in her favor, and against the Defendant, CONCRETE MIXES, INC., and in support of such motion alleges and avers as follows:

## NATURE OF ACTION

1. This action states a claim for gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* and under the District of Columbia Human Rights Act, D.C. Code §2-1401.01 *et seq*. and the common law of the District of Columbia, and specifically, the creation and maintenance of a discriminatory and hostile working environment in plaintiff's employment, and in the termination of Plaintiff, Tahkina T. Sellers.

2. This action also states a federal claim against the Defendant under the Equal Pay Act, 29 U.S.C. § 206(d), and a claim for violation of the D.C. Wage Payment and Collection Act.

## PARTIES

3. Plaintiff Tahkina T. Sellers ("Ms. Sellers") is a resident and citizen of the Commonwealth of Virginia. At all time relevant hereto, Ms. Sellers was employed by Concrete Mixes, Inc. in the District of Columbia.

4. Ms. Sellers was an "employee" of the Defendant within the meaning of 42 U.S.C. § 2000e(f).

5. Concrete Mixes, Inc. ("CMI") is a supplier of ready concrete mix in the construction industry.

6. Defendant Concrete Mixes, Inc. ("CMI") is organized under the laws of the District of Columbia.

7. CMI is an "employer" within the meaning of 42 U.S.C. §2000e(b) and 29 U.S.C. §2611(4)(A).

8. CMI has had more than 15 employees in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of Ms. Sellers' claims under Title VII of the Civil Rights Act of 1964, as amended, pursuant to 42 U.S.C. § 2000e-5(f).

10. This Court has jurisdiction over Ms. Sellers' claims pursuant to 29 U.S.C. § 206(d).

11. The causes of action alleged in this action arose within the District of Columbia.

12. At all times relevant hereto, CMI was (and is) present in, and conducted business in, the District of Columbia, and therefore is subject to the personal jurisdiction of this Court.

13. CMI is an "employer" within the meaning of D.C. Code § 2-401.02(10).

14. At all times relevant hereto, CMI was Ms. Sellers' "employer" within the meaning of D.C. Code § 2-1401.02(10).

15. The causes of action alleged in this action arose in this judicial district.

16. The unlawful employment practices committed by CMI occurred in this judicial district, employment records relevant to such practices are maintained and administered in this judicial district, and Ms. Sellers was, at all times relevant hereto, employed in this judicial district.

17. Jurisdiction and venue over Ms. Sellers' claims are proper in this Court.

## PROCEDURAL STATUS

18. Ms. Sellers timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission and filed a supplemental Charge on July 9, 2019.

19. Ms. Sellers received a right-to-sue letter from the EEOC dated April 2, 2019.

20. All prerequisites to filing suit have been met, and this action is timely filed.

## BACKGROUND

21. Ms. Sellers has been a mechanic for over 28 years. Prior to working at CMI, Ms. Sellers had significant experience as a Diesel Mechanic, working for WMATA (public transit), two private corporations, the Fairfax County Government, the City of Alexandria, and as a mechanic at Andrews Air Force Base. Ms. Sellers has also served as a Diesel/Automotive Mechanic Instructor.

22. Ms. Sellers has an Associate Degree in Computer Systems – Networking & Hardware Technology and an Associate Degree in Automotive Technology; Ms. Sellers has been an ASE ("Automotive Service Excellence") certified mechanic since 2001; Ms. Sellers earned a certificate in Electrical/Electronic Technology; and Ms. Sellers has studied computer security and forensics.

23. Ms. Sellers was invited to CMI's holiday party to meet/informally interview with Reginald ("Reggie") Green ("Mr. Green"), President of CMI, and was offered employment effective January 2, 2018.

24. Upon her hire, Ms. Sellers was the only female mechanic at CMI.

25. Ms. Sellers' starting rate of pay was $21.00. After she completed her first few weeks, Mr. Green called Ms. Sellers to his office, again welcomed Ms. Sellers to CMI, and said that once she successfully completed her 90-day probationary period, her hourly rate would increase to $25.00 and she would receive a bonus. He did not specify an amount.

26. Although Ms. Sellers was hired as a mechanic to perform maintenance on trucks, within a few weeks, her job duties at CMI expanded to include data entry (managing workflow) by electronically documenting production and scheduling work orders.

27. Mr. Green bought a lap top for Ms. Sellers to work on to perform many of these functions since she was the only mechanic with the required computer skills to do this task at the time.

28. During her tenure at CMI, Ms. Sellers was the only person performing the computer tasks.

29. Ms. Sellers was also the only mechanic, to her knowledge, to obtain a Commercial Driver's License, which was needed to legally drive the large, diesel commercial trucks serviced by CMI.

30. In addition, Ms. Sellers signed off on Department of Transportation repair tickets for work performed on trucks which were taken out of service (such as by a law enforcement officer noticing or ticketing for faulty equipment) for repair. A CDL was required in order to be authorized to perform this task.

31. Ms. Sellers successfully completed her probationary period and received very positive performance reviews. CMI (Mr. Green, Dave Lattahall (Fleet Analyst) and her co-workers) was particularly pleased with her data entry/workflow management.

32. Ms. Sellers received an increase in pay, but only to $22 per hour, and not the $25 she had been promised after successful completion of the 90 day probationary period. Ms. Sellers did not receive any type of bonus.

33. Ms. Sellers is aware of at least one other mechanic, a male, who was paid more than she was despite doing the same job, under the same conditions. In fact, this male mechanic actually had fewer job duties than Ms. Sellers did, since Ms. Sellers was the only one to perform the data entry and work flow management duties in addition to mechanic's duties.

34. In addition to the unequal pay, Ms. Sellers was not compensated for all of her overtime hours. On at least two occasions when she worked 12 hours days, Ms. Sellers was not paid for the additional four hours worked each day. Ms. Sellers requested compensation for the overtime verbally, and by email to the dispatcher, Mike Brosman, who was in charge of collecting hours. The response from Mr. Greene was that he cut back on overtime because Eddie

Gray (another mechanic) and Ms. Sellers were "not getting any work done. This statement was demonstrably false.

35.     Shortly before her termination, CMI hired Robert Britt ("Mr. Britt"), a new mechanic. On information and belief, CMI hired Mr. Britt, a male mechanic, and terminated Ms. Sellers, because of the perception that Ms. Sellers would not be able to handle "heavy work," and then CMI paid him more than Ms. Sellers had been paid, to do the same job, solely because he is male.

36.     After he was hired, Mr. Britt repeatedly commented in the work place that Eddie Gray (another mechanic) was Ms. Sellers' boyfriend. This is false. He also made sexual comments, which Ms. Sellers tried her best to ignore, but which made her uncomfortable.

37.     On another occasion, the Fleet Analyst, Dave Lattahall, told Ms. Sellers (about working at CMI) "This is a man's world. This is no place for a woman."

38.     On or around April 18, 2018, Ms. Sellers was summoned to Mr. Green's office. When she arrived, Dave Lattahall was already present. Mr. Green stated that CMI was going to have "heavy work" coming in, which as a female, Ms. Sellers would not be able to handle, and because of that, her employment was being terminated.

39.     Ms. Sellers was extremely shocked and taken aback by her abrupt termination, which was completely unjustified by her performance, and was based entirely on the fact that Ms. Sellers is a woman, and therefore perceived as not being able to handle "heavy work."

40.     Ms. Sellers has never been given any legitimate justification for her termination. Ms. Sellers was explicitly told she was being terminated because of her gender. This is an unconcealed, intentional violation of law.

**COUNT ONE –
GENDER DISCRIMINATION AND
<u>HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII</u>**

41. The allegations of each of the preceding paragraphs are incorporated herein as if specifically realleged.

42. Ms. Sellers was discriminated against in her level of pay, subjected to a hostile work environment, and terminated because of her gender, female.

43. Acts of discrimination include, but are not limited to: paying Ms. Sellers less than male employees for doing the under the same job under the same circumstances, and, in one instance in particular, paying her less than a male mechanic with fewer job duties; awarding Ms. Sellers lower pay increases than male employees; failing to compensate Ms. Sellers for all over time hours worked; and ultimately, terminating Ms. Sellers based on CMI's stated belief that she would not be able to handle the "heavy work" because she is female.

44. In addition, Ms. Sellers was subjected to hostile and harassing comments based on her gender, including Mr. Britt repeatedly commenting that another (male) mechanic was Ms. Sellers' boyfriend (false); Mr. Britt making unwanted sexual comments, which Ms. Sellers tried her best to ignore, but which made her uncomfortable; and Mr. Lattahall telling Ms. Sellers (about working at CMI) that "This is a man's world.  This is no place for a woman."

45. CMI's discriminatory treatment of Ms. Sellers violates Title VII of the federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

46. In discriminating against Ms. Sellers in violation of federal law, CMI evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Ms. Sellers.

47. CMI engaged in these practices with malice and with reckless indifference to the federally protected rights of Ms. Sellers, within the meaning of 42 U.S.C. § 1981a(b)(1).

48. As a direct and proximate result of CMI's actions, Ms. Sellers has suffered and continues to suffer emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses, and other non-pecuniary losses.

49. Due to the conscious disregard for Ms. Sellers' federally protected rights, and the severity of CMI's conduct, Ms. Sellers is also entitled to punitive damages.

**COUNT TWO –
GENDER DISCRIMINATION IN THE COURSE OF EMPLOYMENT IN
VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**

50. The allegations of each of the preceding paragraphs are incorporated herein as if specifically realleged.

51. Ms. Sellers was an employee of CMI within the meaning of D.C. Code § 2-1401.02(9).

52. CMI is an employer within the meaning of D.C. Code § 2-1401.02(10).

53. CMI, through its agents, officers and employees, discriminated against Ms. Sellers on account of her gender (female) during the course of Ms. Sellers' employment.  This discrimination was with respect to the terms, conditions, and privileges of Ms. Sellers' employment, in violation of D.C. Code § 2-1402.11.

54. Rather than remedying the discriminatory working environment, CMI engaged in a course of conduct to terminate Ms. Sellers' employment, in violation of D.C. Code § 2-1402.11(a)(1).

55. Ms. Sellers was discriminated against in her level of pay, subjected to a hostile work environment, and terminated because of her gender, female.

56. Acts of discrimination include, but are not limited to: paying Ms. Sellers less than male employees for doing the under the same job under the same circumstances, and, in one instance in particular, paying her less than a male mechanic with fewer job duties; awarding Ms. Sellers lower pay increases than male employees; failing to compensate Ms. Sellers for all over time hours worked; and ultimately, terminating Ms. Sellers based on CMI's stated belief that she would not be able to handle the "heavy work" because she is female.

57. In addition, Ms. Sellers was subjected to hostile and harassing comments based on her gender, including Mr. Britt repeatedly commenting that another (male) mechanic was Ms. Sellers' boyfriend (false); Mr. Britt making unwanted sexual comments, which Ms. Sellers tried her best to ignore, but which made her uncomfortable; and Mr. Lattahall telling Ms. Sellers (about working at CMI) that "This is a man's world. This is no place for a woman."

58. CMI engaged in the discriminatory conduct set forth above and throughout this Complaint based on Ms. Sellers' gender (female) in violation of D.C. Code § 2-1402.11(a)(1).

59. Ms. Sellers was terminated as a result of the discrimination to which she was subjected.

60. This discrimination involved and affected the terms, conditions, and privileges of Ms. Sellers' employment in violation of D.C. Code § 2-1402.11.

61. The actions of CMI had the effect and consequence of violating the provisions of the D.C. Human Rights Act, D.C. Code § 2-1401, *et seq.*, in violation of D.C. Code § 2-1402.11.

62. The discriminatory actions of CMI were intentional, were actuated by malice, spite, and ill-will, were willful and wanton, and evinced a conscious and reckless disregard for Ms. Sellers' rights.

63. As a direct and proximate result of CMI's actions, Ms. Sellers has suffered and continues to suffer emotional distress and physical injury. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses, and other non-pecuniary losses.

64. As a direct and proximate result of CMI's discrimination, Ms. Sellers is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as described in D.C. Code §2-1403.13 and the Code of D.C. Municipal Regulations, Title 4, Chapter 2, 4-200 CDCR, *et seq*.

65. Due to the character and severity of the actions of CMI, and consistent with their intentional discrimination, Ms. Sellers is also entitled to punitive damages.

## COUNT THREE –
## VIOLATION OF THE EQUAL PAY ACT

66. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

67. Ms. Sellers was eminently qualified for her position, and within a few weeks of her hiring, her job duties expanded to include data entry (managing workflow) by electronically documenting production and scheduling work orders, because at that time, she was the only mechanic with the required computer skills to do this work.

68. Ms. Seller was, to her knowledge, also the only mechanic to obtain a Commercial Driver's License, which was needed to legally drive the large, diesel commercial trucks serviced by CMI, and which was needed to sign off on Department of Transportation repair tickets for work performed on trucks which were taken out of service (such as by a law enforcement officer noticing or ticketing for faulty equipment) for repair, which was another duty assumed by Ms. Sellers.

69. Despite this, CMI paid Ms. Sellers a lower salary than male mechanics, for doing not just the same job, but a job with *greater* responsibilities than her male counterparts, under the same circumstances.

70. The lower compensation paid to Ms. Sellers was on account of her gender (female), and not due to a seniority system, level of qualifications, a merit system, or a differential based on any factor other than gender.

71. CMI's failure to provide Ms. Sellers with equal pay was willful and persisted throughout her tenure with CMI.

72. As a direct and proximate result of the unequal pay, and CMI's specific illegal acts, Ms. Sellers has suffered and will suffer in the future great damages, including loss of income, litigation expenses including attorneys' fees, and other past pecuniary losses.

73. Because CMI's conduct was willful, Ms. Sellers is entitled to the full amount of damages recoverable under the Equal Pay Act, 29 U.S.C. § 206, *et seq.*, including, but not limited to compensatory damages, liquidated damages in an amount equal to the compensatory damages and attorney fees and costs as described in 29 U.S.C. § 216(b).

## COUNT FOUR –
## VIOLATION OF THE D.C. WAGE PAYMENT ACT

74. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

75. Ms. Sellers' compensation included overtime pay, which she had earned.

76. In addition to being paid less than male employees performing the same or lesser jobs (no computer related responsibilities), Ms. Sellers was not compensated for all of her overtime hours.

77. On at least two occasions when Ms. Sellers worked 12 hours days, she was not paid for the additional four hours worked each day.  Ms. Sellers requested compensation for the overtime verbally, and by email to the dispatcher, Mike Brosman, who was in charge of collecting hours.

78. Despite this, CMI failed to pay Ms. Sellers her earned overtime pay.

79. As such, Ms. Sellers is entitled to eight (8) hours of overtime pay, plus quadruple/ statutory damages, attorney's fees and costs, and appropriate injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TAHKINA T. SELLERS requests that this Court enter judgment in her favor and against the Defendant CONCRETE MIXES, INC., on the above Counts, and further:

(a) Award Ms. Sellers compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on each of the above-stated Counts One through Four; and in addition

(b) Award Ms. Sellers punitive and exemplary damages, to be determined by a jury, on Counts One and Two; and in addition

(c) Award Ms. Sellers liquidated damages on Count Three; and in addition

(d) Award Ms. Sellers quadruple damages on Counts Four; and in addition

(e) Award Ms. Sellers attorneys' fees and the costs of this action; and in addition

(f) Award injunctive relief consisting of an order prohibiting Defendant from engaging in further employment practices that create or tolerate a hostile or work environment based on gender; and in addition

(g) Declare that the Defendant has violated Title VII and the District of Columbia Human Rights Act, and enjoin the Defendant from further violations; and in addition

(h) Award Ms. Sellers such other and further relief as may be appropriate under the circumstances.

## JURY DEMAND

**PLAINTIFF TAHKINA T. SELLERS DEMANDS A TRIAL BY JURY.**

July 1, 2019                                       Respectfully submitted,

*/S/ CARLA D. BROWN*
Carla D. Brown
D.C. Bar No. 474097
cbrown@cbcblaw.com
CHARLSON BREDEHOFT
  COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
*Counsel for Plaintiff, Tahkina T. Sellers*